A. E. STALEY MANUFACTURING COMPANY, Plaintiff-Appellee, *v.* SWIFT & COMPANY, Defendant-Appellant.

Fourth District   No. 14803

Opinion filed October 31, 1978.—Rehearing denied December 5, 1978.

CRAVEN, J., dissenting.

Robert D. Winters, of Armstrong, Winters, Prince, Featherstun & Johnson, of Decatur, and Frederic S. Lane, of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellant.

Nicholas J. Neiers, of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, and Stuart M. Levine, of Sacks, Montgomery, Pastore & Levine, of New York, New York, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Staley filed $39 million dollar breach of contract action.

Swift moved to dismiss on *forum non conveniens.*

Trial judge denied.

Interlocutory appeal allowed (2-1 vote).

Trial court is affirmed.

Staley Manufacturing Company and Swift & Company contracted on March 1, 1976, for the sale by Swift to Staley of four soybean processing plants for $45,000,000. The written agreement stated that Staley was to retain (and did retain) 10% of the purchase price pending completed construction of one plant, located in Iowa. Swift covenanted that it would be liable for completing the construction of the unfinished Des Moines plant in accordance with certain attached plans and specifications. Swift also agreed to make its best efforts to start up the plant and have it be in operational status by a date certain and indemnified Staley against any mechanic liens that would be put against the Des Moines plant. Swift promised to build the plant in compliance with all applicable government regulations. Both sides agreed that "time was of the essence" in the performance of the contract and the agreement specifically stated Illinois contract law would govern regarding the interpretation and performance of the contract.

Problems arose between Swift and Staley over the completion of the Des Moines plant. On Monday, September 12, 1977, Staley filed the instant breach of contract action in Macon County circuit court. Alleged breaches of the March 1, 1976, agreement included: (1) Swift had not timely performed parts of the contract; (2) Swift had deviated from the plans and specifications in some manners (leaving things out or putting in defective parts); (3) Swift did not meet certain operational standards set forth in the contract; and (4) Swift failed to meet certain State and Federal regulations. Staley further alleged that Swift abandoned the contract. Staley sought damages of $39,800,000 plus costs and interest, and demanded a jury.

On October 3, 1977, Swift filed a motion to dismiss based on *forum non conveniens* or, in the alternative, for a stay pending disposition of a suit filed in Iowa. The motion stated that on Monday, September 12, 1977,

Swift initiated an action in Des Moines, Iowa, based on the same contract. The complaint, attached to the motion, alleged that Swift completed substantial performance of the contract, and that Swift had incurred certain expenses in obeying Federal regulations and, although the Des Moines plant did not meet certain contract process guarantees, the fault was on Staley for providing substandard beans rather than on any breach by Swift. The suit seeks recovery of the $4,500,000 retainage. Swift alleges that the Illinois forum is inconvenient because it cannot assert possible indemnity claims in Illinois against certain Iowa subcontractors and that proper access to proof and witnesses would be in Des Moines, even though the contract was signed in Chicago. Affidavits of Swift filed in support of the motion list a number of subcontractors, most of them residing in Iowa, which Swift feels would be important to the ultimate determination of any questions arising out of the contract. Staley's affidavit in opposition to the motion lists many corporate officers residing in Decatur and Chicago whom it feels would be pertinent witnesses to any determination of contract breach.

On November 15, 1977, the trial court, after thorough briefing and argument, denied the motion to dismiss on *forum non conveniens* stating that both parties were residents of Illinois (both have their principal place of business in Illinois) and that the contract law of Illinois would control the dispute between the parties. The court felt that Illinois law should be handled in an Illinois court and that the granting of a *forum non conveniens* motion was not a normal occurrence. In addition, the court said his ruling is nothing more than what the parties assumed would occur when they signed the contract regarding any litigation about the contract (*i.e.*, that it would be in an Illinois court). Judge Morthland continued:

> "I would like to [grant the *forum non conveniens* motion] because this case is a mess, has been a mess, and will continue to be a mess, and I would save myself and the people who are sitting here way beyond quitting time a lot of trouble by granting the motion. But the motion is denied."

Between September 12 and the November 15 decision, the court had heard extraordinary motions relating to discovery of documents and depositions of parties which not only consumed much court time but also saw rather childish and overly picky sniping displayed by counsel for both parties.

On February 8, 1978, the trial court entered an order comporting with Supreme Court Rule 308 (Ill. Rev. Stat. 1977, ch. 110A, par. 308). The order found that the action was for breach of contract in the construction of a Des Moines manufacturing plant, Illinois law would govern under the contract, and that Swift and Staley's principal offices were in Illinois. The question certified was:

"Should an action brought by Plaintiff-Buyer in Macon County, Illinois, where the principal office of the plaintiff is located, against Defendant-Seller, regarding the purchase from the Defendant of a facility located in Des Moines, Iowa, which was in the process of being constructed, and wherein both the plaintiff and the defendant are corporations with their principal offices in the State of Illinois, and wherein the contract provides that Illinois law will govern, be dismissed pursuant to the doctrine of *forum non conveniens*, when the subject matter of the contract was located in Des Moines, Iowa, and most of the subcontractors for the construction of said facility are located within the State of Iowa?"

After oral arguments ordered by this court, the Rule 308 application was allowed, one judge dissenting.

■■ Before addressing Swift's main issue on appeal, two minor points should be discussed. Swift argues in substance the fact that Judge Morthland entered a Rule 308 order on the *forum non conveniens* question is a judicial recognition of the *bona fides* of Swift's claim. This is palpably without merit. The entire record before us reveals an equally reasonable interpretation that the court politely accommodated Swift's desire to, if possible, have immediate appellate review of the court's denial of Swift's motion to dismiss. Entry of a Rule 308 order by a trial court in no way intimates that the court felt it erred. Secondly, Swift contends the trial court did not weigh all material factors in denying Swift's motion, or, in other words, committed an error of law. We find, however, that the court did take into consideration all material factors surrounding Swift's *forum non conveniens* motion and the question is not about an error of law, but rather whether an abuse of discretion occurred.

Regarding the denial of *forum non conveniens*, Swift argues four points. First, Swift contends that a jury view would be necessary to understand the breach of contract action and that a Des Moines jury would be much more convenient for this purpose (Staley committed itself before the trial court, if need be, to fly the court and jury to Des Moines). Secondly, Swift argues that many of the witnesses to testify about the breach of the contract would be contractors and subcontractors who are not amenable to service in Illinois. Thirdly, Swift maintains that a trial in Macon County would be an undue burden on the local judicial system due to the fact that this trial may take many months and that a fairer trial would be one in Des Moines, Iowa, where the plant is located. Finally, Swift contends Illinois substantive law would still control if the trial were held in Iowa.

Staley replies that there is no other action identical to the Illinois action brought by Staley since the Swift suit is not based on breach of contract, but rather is based on an attempt to receive whatever retainage is due it

after it had abandoned the $45,000,000 contract. Staley next argues that both corporations are Illinois residents and that not only will Illinois contract law govern, but also many of the witnesses involved in the formation and the day-to-day performance of the contract (including employees of Globe, a wholly owned subsidiary of Swift's parent company, Esmark, and Swift's acknowledged general contractor on the plant) are Illinois residents.

■■■ The doctrine of *forum non conveniens* is founded in considerations of fundamental fairness and sensible and efficient judicial administration which is intended to serve the convenience of the parties and the ends of justice. Of the factors involved are the relative capabilities of the forums to provide a fair trial (*Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 301 N.E.2d 729). The leading case involving *forum non conveniens* is the 1947 Supreme Court decision in *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839. The Court indicated, under *forum non conveniens*, a trial court may decline its jurisdiction in exceptional circumstances. No attempt was made to categorize all of the circumstances where *forum non conveniens* should be applied since the doctrine leaves much to the discretion of the trial court and the combination and weight of factors would be difficult to forecast. However, Mr. Justice Jackson did indicate that the "private" factors would include the ease of access to proof and the ease or difficulty with which witnesses would be available for trial, the possibility of a view, if appropriate, and the enforceability of any decree. The court continued that unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Regarding "public" factors, the court found the burden on a court with no relation to the litigation should not be too great and that a trial in a forum that is at home with the state law that governs is a positive factor. In *Gulf*, the court decided that before it was one of the "rather rare cases" where the doctrine should be applied. That same day, the court, in *Koster v. Lumbermens Mutual Casualty Co.* (1947), 330 U.S. 518, 91 L. Ed. 1067, 67 S. Ct. 828, stated where only two parties are involved in a legal dispute there is good reason why the case should be tried in plaintiff's home forum if that was plaintiff's choice.

It is settled Illinois law that the determination of whether the varying factors exist in sufficient degree to warrant the application of the doctrine of *forum non conveniens* is left to the sound discretion of the trial court and that determination will not be set aside upon review unless an abuse of discretion is clearly shown. (*McDonald's Corp. v. Smargon* (1975), 31 Ill. App. 3d 493, 334 N.E.2d 385; *Fender v. St. Louis Southwestern Ry. Co.* (1971), 49 Ill. 2d 1, 273 N.E.2d 353; *Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 229 N.E.2d 536; *Whitney v. Madden* (1948),

400 Ill. 185, 79 N.E.2d 593; *Sears, Roebuck & Co. v. Continental Insurance Co.* (1972), 9 Ill. App. 3d 287, 292 N.E.2d 75.) Illinois courts have also decided that unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Bagarozy v. Meneghini* (1955), 8 Ill. App. 2d 285, 131 N.E.2d 792; *American Home Assurance Co. v. Northwest Industries, Inc.* (1977), 50 Ill. App. 3d 807, 365 N.E.2d 956; *Cotton v. Louisville & Nashville R.R. Co.* (1958), 14 Ill. 2d 144, 152 N.E.2d 385.

Illinois has used the basic factors outlined in *Gulf* in determining the parameters of *forum non conveniens* in Illinois. In *American Home*, the court stated the motion for *forum non conveniens* should be denied where there is a relevant connection between the litigation and the chosen forum. In *Sears*, the appellate court found the common thread among Illinois *forum non conveniens* cases *where the motion was granted* was that the cases showed little if any connection with Illinois. In this case, on the contrary, there are substantial connections between the parties and Illinois. Illinois law will be used to determine if a breach of contract occurred, or, for that matter, what, if any, amount of the retainage Swift will be entitled to. Both plaintiff and defendant are residents of Illinois. The case is not without economic impact, which will be felt most directly in Illinois. From the affidavits filed, it appears that while some witnesses to the alleged breaches in the contract might be residents of Iowa, many, if not all, of the principals involved would be Illinois residents. Most, if not all, of the corporate paper work to be discovered would be either in Decatur or Chicago (home of Swift). In *Giesburt v. Chicago, Burlington & Quincy R.R. Co.* (1963), 45 Ill. App. 2d 262, 195 N.E.2d 746, the court stated that there is a singular appropriateness in trying a case in the State whose law governs. This court, in *First Professional Leasing Co. v. Rappold* (1974), 23 Ill. App. 3d 420, 319 N.E.2d 324, stated that Illinois courts have a legitimate interest in providing a forum and redress for its residents when contracts executed in Illinois for which Illinois law governed are breached by nonresidents. In this case, of course, both parties are residents. The possibility that a view of the plant will be made is not dispositive; such visits would by necessity show a change from the circumstances which precipitated the suit (see *American Home*). The lack of compulsory process over a few possible witnesses, on a subject collateral to liability (*i.e.*, indemnity), standing alone, does not tip the balance in Swift's favor.

It appears a parallel action has been commenced in Des Moines, Iowa, by Swift, but Swift cites no authority where the pendency of a parallel action in another jurisdiction has supported a trial court's decision to decline jurisdiction under the common law doctrine of *forum non conveniens*. Although the pendency of a parallel action *may* possibly be a

factor in dismissing a case (see Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(c)),. Swift chose to seek dismissal on a common law—rather than a statutory—basis. Swift failed to cite section 48(1)(c) to either the trial or reviewing court and failed to develop a proper record for a disposition under section 48(1)(c).

■■ The dissent is apparently quite concerned with where the game is played. Whether it is home court or that of the other team, it is never neutral. The court is always on someone's home turf. And under the rules of the game in Illinois it is the parties who try the case—not the court. This is still an adversary system. Swift chose *forum non conveniens* rather than section 48(1)(c), thus consenting to play on Staley's home court. We are not the players, merely the referees. And the shots must be called in Illinois. Under the familiar rule that the appellate court will not consider arguments or positions not raised below, we find that Swift by its chosen posture has waived such contention on appeal.

■■ The bottom line: We hold the trial court did not abuse its discretion in denying Swift's motion to dismiss; the balance of factors does not so strongly favor Swift that Staley's choice of forum should be disturbed. This litigation has substantial connection with Illinois and is not one of those "rather rare cases" where the doctrine's application would be proper. The trial court's decision is affirmed, and the cause remanded for further proceedings.

Affirmed and remanded.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

To have a complicated contract action based on the same facts and between substantially the same parties being litigated simultaneously in two jurisdictions is an incredible waste of judicial energy and is clearly "incompatible with the orderly and efficient administration of justice." (*People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249, 257, 357 N.E.2d 534, 538.) It is highly inappropriate for this court, or any Illinois court, to assume an Iowa tribunal would not provide fair and impartial justice to the litigants, just as it would be equally inappropriate for the Iowa judiciary to harbor such doubts toward this jurisdiction.

The majority does the common law doctrine of *forum non conveniens* a disservice, for the pendency of the second suit in Iowa takes this case out of the doctrine's scope and, instead, makes the inquiry one under the Civil Practice Act. Section 48 (Ill. Rev. Stat. 1977, ch. 110, par. 48) provides, in part:

"(1) Defendant may, within the time for pleading, file a motion

for dismissal of the action or for other appropriate relief upon any of the following grounds. * * *

* * *

(c) That there is another action pending between the same parties for the same cause."

In *Gitchoff*, our supreme court held neither the parties nor the causes of action need be identical to form a basis for a section 48(1)(c) dismissal; a substantial similarity will suffice. A substantial similarity exists in this case.

The section 48(1)(c) question is not directly raised by Swift, but Swift's allegation that it filed suit some 20 minutes before Staley goes unchallenged. A section 48(1)(c) dismissal does not require the exercise of judicial discretion except in those rare instances where complaints are filed simultaneously and neither court has priority of jurisdiction (*Gerber v. First National Bank* (1975), 30 Ill. App. 3d 776, 332 N.E.2d 615). In *Gerber*, the court said:

"The statutory language is unambiguous. It grants a right to dismiss, thus fostering orderly procedure and relieving litigants and courts of unnecessary burdens associated with multiple actions. The pendency of an action is determined by the date the complaint is filed. (*People ex rel. Lehman v. Lehman* (1966), 34 Ill. 2d 286, 215 N.E.2d 806.) A section 48(1)(c) motion should not require the exercise of judicial discretion except in those rare instances—this is not one—where complaints in both actions are filed simultaneously and neither court has priority of jurisdiction. (See, *e.g., Skolnick v. Martin* (1965), 32 Ill. 2d 55, 203 N.E.2d 428.) Gerber's suit for declaratory judgment preceded the bank's action in confessing judgment on the note. The declaratory suit involved the identical parties as the confession case and was brought for the same cause. Actions are for the same cause when relief is requested on substantially the same set of facts. *Skolnick v. Martin*." 30 Ill. App. 3d 776, 780, 332 N.E.2d 615, 618-19.

In *Baker v. Salomon* (1975), 31 Ill. App. 3d 278, 334 N.E.2d 313, plaintiffs in Illinois circuit court filed an action against defendants some 59 minutes after defendants filed suit against them in the United States District Court for the Southern District of New York. The appellate court affirmed the trial court's dismissal of the Illinois action under section 48(1)(c).

The result of the majority opinion in this case is to have litigation going on in Iowa and Illinois involving the same subject matter, between essentially the same parties, relating to the same issues; and the litigation would presumably go on at approximately the same time. Except for the benefit of full employment of counsel, I can conceive of no other useful purpose of such waste of judicial resources. The majority opinion

remands. Upon remand, presumably Swift, if indeed it was the swiftest to the courthouse and filed the Iowa litigation first, can still file a motion to dismiss "within the time for pleading" (Ill. Rev. Stat. 1977, ch. 110, par. 48). In which event, the trial court under the language of *Gerber* and *Baker* would dismiss the matter and the cause would proceed to resolution in the Iowa court where it was first begun. I see no reason to presume a "home court advantage" in complex litigation: basketball games, yes, but not a lawsuit. Further, the adversary system does not require judicial wheel-spinning.

The Illinois litigation should be dismissed at this juncture under the cited section of the Civil Practice Act.